IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff | ) ) | 6:19-cr-00219-LSC-SGC-7 |
| v. | ) ) | |
| JOHN GLADDEN, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER DENYING DEFENDANT JOHN GLADDEN'S MOTION FOR ACQUITTAL OR NEW TRIAL**

On March 1, 2021, a jury found Defendant John Gladden ("Gladden") guilty of one count of conspiracy to commit health care fraud and mail fraud, in violation of 18 U.S.C. § 1349; six counts of healthcare fraud, in violation of 18 U.S.C. § 1347; one count of mail fraud, in violation of 18 U.S.C. § 1341; and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. Gladden has moved for the Court to overturn the jury's verdict and enter a judgment of acquittal under Fed. R. Crim. P. 29 or, in the alternative, to grant a new trial under Fed. R. Crim. P. 33. (Docs. 247, 248.)  Gladden's motions are due to be denied in full.

**Discussion**

A district court may overturn the jury's verdict and enter a judgment of acquittal under Fed. R. Crim. P. 29 "if there is insufficient evidence to sustain the

verdict." *United States v. Williams*, 390 F.3d 1319, 1324 (11th Cir. 2004). "Unless the jury could not have found the defendant guilty under any reasonable construction of the evidence," the court must uphold the conviction. *United States v. Frank*, 599 F.3d 1221, 1233 (11th Cir. 2010). Under Rule 33, a court may vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim P. 33. "The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985).

At trial, ample evidence supported the jury's verdict on all counts. First, Gladden provided substantive evidence of his guilt when he took the stand and testified. "[A] statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt." *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). Gladden denied that he had participated in the conspiracy. (Feb. 26, 2021 Tr. 32:6-18.) However, his testimony changed over time. For example, Gladden testified at various points that "only one" of his sales reps obtained a prescription for SilaPak in July 2015, (Feb. 26, 2021 Tr. 20:22–25), that he did not believe he had signed up for insurance through Global's carrier, (Feb. 26, 2021 Tr. 66:20–21), and that he had not tried to get Global prescriptions for himself or his family, (Feb. 26, 2021 Tr. 30:17–21). But on cross-examination,

he admitted that the record showed additional employees obtained SilaPak in July 2015. (Feb. 26, 2021 41:2–48:10), that he had applied for Blue Cross Blue Shield of Alabama health insurance through Global, (Gov't Ex. 1001), and that he had obtained a prescription for his son, (Feb 26, 2021 Tr. 68:22–69:11). The jury was entitled to evaluate Gladden's testimony, consider his demeanor and credibility, and believe the opposite of what he said. *See Brown*, 53 F.3d at 314.

Gladden's emails to sales representatives also support the jury's verdict. Gladden wrote "everyone should have a personal script for yourself, spouse, and family members." (Gov't Ex. 162.) Days later, Gladden reiterated that the prescription "is reimbursed very well and you should have EVERY family member, who is on your health plan, have a script. I will be monitoring this to make sure that ALL of TEAM GEORGIA has theirs." (Gov't Ex. 172.) When one of his representatives voiced concern about raising red flags because she had no medical documentation that would justify a prescription for pain, Gladden told her to "just have a buddy" write her a prescription for SilaPak. (Gov't Ex. 169.)

At Gladden's urging, two sales representatives—Megan Rumble and Dawn Whitten—obtained prescriptions for themselves. (*See* Gov't Exs. 200, 201.) Whitten also obtained a prescription for her daughter. (*See* Gov't Ex. 177 at 22–24.)

After Global's Haleyville pharmacy filled Whitten's prescription, Gov't Ex. 818, UPS records show that a package with this prescription was mailed from Global's Haleyville pharmacy to Whitten. Gov't Ex. 259 at 44–45. The United States offered evidence of Gladden's knowledge of these prescriptions, including the commission reports that Gladden received, *see* Gov't Exs. 31, 33, 35, 36, 38, 42, 43, and various email exchanges, *see* Gov't Exs. 114, 117, 119, 121, 170, 171.

The record supports Gladden's conviction on all counts. Gladden's emails, his own testimony, and witness testimony demonstrate an intent to join Global's conspiracy to defraud insurance companies. Indeed, by ordering "everyone" to get a "personal script for yourself, spouse, and family members," a reasonable jury could have determined that Gladden ordered his sales representatives to obtain medically unnecessary prescriptions in order to bill insurance companies. When Whitten acted on this order—obtaining medically unnecessary, forged prescriptions for her daughter through the mail—Gladden perpetrated healthcare fraud, mail fraud, and identity theft.

Despite this evidence, Gladden argues that the Court should overturn his conviction because (1) the Court lacked venue and (2) the United States did not prove Gladden's specific intent to defraud. However, both arguments rest on mischaracterizations of the law.

First, Gladden waived any venue argument because he failed to raise this issue before his post-trial motion. *See United States v. Dabbs*, 134 F.3d 1071, 1078 (11th Cir. 1998). Even if Gladden had not waived his venue argument, the record demonstrates that venue was proper for all counts. Indeed, the United States offered evidence of overt acts committed in furtherance of the conspiracy in the Northern District of Alabama, including the filling, dispensing, and mailing of various fraudulent prescriptions that form the basis for Gladden's crimes.

Second, Gladden argued throughout his trial that the United States has failed to prove an "intent to defraud" because the United States could not show Gladden knew his conduct was illegal. But the intent to defraud only requires "that the defendant had the intent to deceive." *United States v. Paradies*, 98 F.3d 1266, 1285 (11th Cir. 1996). "[I]gnorance of the law is no defense." *Id.* The United States proved Gladden's intent to deceive insurance companies through his emails, his own testimony, and the testimony of his co-conspirators. Accordingly, Gladden's arguments are without merit.

## Conclusion

The weight of evidence does not predominate against conviction, and a reasonable jury could have determined that Gladden was guilty on all counts. Therefore, acquittal is not proper under Fed. R. Crim. P. 29, and a new trial is not

proper under Fed. R. Crim. P. 33. Gladden's motions (docs. 247, 248) are hereby **DENIED** in full.

**DONE** and **ORDERED** on April 28, 2021.

/s/ L. Scott Coogler
L. Scott Coogler
United States District Judge

203171